```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

KENYON TAYLOR,                )
                              )
          Plaintiff,          )
                              )
    v.                        )      No.  09 C 5092
                              )
CITY OF CHICAGO, et al.,      )
                              )
          Defendants.         )

## MEMORANDUM OPINION AND ORDER

Although this Court addressed the post-Final-Pretrial-Order ("FPTO") motions in limine filed by defendants promptly after they were brought to issue, a regrettable breakdown in its system of follow-ups on motions pending in cases on its calendar has resulted in the motions in limine by plaintiff Kenyon Taylor ("Taylor") having lain fallow for some months.  Fortunately that has not prejudiced the parties--this action's place in the lineup of cases scheduled for trial has caused it to be scheduled for trial next February.  This memorandum opinion and order corrects the oversight.

To begin, defendants do not object to Taylor Motions 1, 7 and 8.  Each is granted.

Taylor Motion 2 has received special treatment from defendants--a separate response.  Although this Court is well aware of the problems that have rarely arisen in this District Court as a result of the nondisclosure by an occasional juror whose voir dire responses have concealed some criminal

background, it has never encountered a problem in that respect in its more than three decades on the bench.  In law as in life we seldom shape our rules or general practices to respond to such rarely encountered aberrations.

Importantly, this Court's method of jury selection--one that does not follow the struck jury model, instead conducting voir dire only of prospective jurors as they are seated in the jury box (both the original impaneled set and other persons who are called individually to replace those who are excused for cause or through peremptory challenges)--would generate a good deal of waste time and effort in obtaining the information piecemeal and providing it to both sides (as is needed to preserve the essential level playing field for the parties).

If a system were to be devised to screen all prospective jurors at the source--before jurors are sent to courtrooms for possible service--that would both avoid such delays in the courtroom and provide the litigants with that level playing field.  This Court might then view the situation differently, but as matters now stand Taylor Motion 2 is granted.

Taylor Motion 3 seeks to bar defendants' use of his mugshot photo or other photos taken by Chicago Police Department evidence technicians.  Defendants respond that during the deposition of Joseph Welborn he identified Taylor from a mugshot--but there would seem to be no reason to challenge his identification of

Taylor (whom he testified he had seen around the neighborhood). Hence the use of the mugshot--which of course poses problems under Fed. R. Evid. ("Rule") 403--would be wholly unnecessary. Taylor Motion 3 is granted.

Taylor Motion 4 would bar testimony that he was arrested in a "high crime area." Use of that pejorative characterization as a basis for police actions is a sort of "guilt by geography"--instead the charged officers' conduct vis-a-vis Taylor ought to be judged by their own contacts with him (or perhaps their own knowledge of him).

As chance would have it, just last month our Court of Appeals had occasion to deal with a case in which this Court's colleague Honorable Joan Lefkow had granted a like motion (<u>Willis v. Lepine</u>, No. 11-2224, 2012 WL 2989253, at *9-*11 (7th Cir. July 23)). Notably the Court of Appeals raised no issue or problem as to Judge Lefkow's ruling as such, focusing instead on instances where the plaintiffs in that case charged defense counsel with having violated the ruling. This Court similarly grants Taylor Motion 4, so that the case may proceed without any such characterization of the area where events took place.

Taylor Motion 5 first seeks to bar any reference to Chicago Police Department arrests that did not result in convictions. Although defense counsel's response memorandum devotes seven pages to Motion 5, not a word is said about arrests (quite

3

understandably, in light of the uniform caselaw authority on that subject). That component of Motion 5 is granted.

As for Taylor's convictions, however, more discussion is needed. When Taylor testifies, Rule 609(a)(1) expressly makes his criminal record fair game for impeachment purposes (unless overridden by Rule 403). That has long been the rule, even though logic would seem to limit such impeachment to the category described in Rule 609(a)(2): "if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement."

In terms of just what can be brought before the jury, the caselaw does not permit what Judge Posner described in <u>Campbell v. Greer</u>, 831 F.2d 700, 707 (7th Cir. 1987) as "harp[ing] on the witness's crime, parad[ing] it lovingly before the jury in all its gruesome details, and thereby shift[ing] the focus of attention from the events at issue in the present case to the witness's conviction in a previous case." But in this instance defense counsel are right in arguing at their Mem. 5-6 that the underlying circumstances of Taylor's conviction stemming from a May 16, 2007 arrest qualify under Rule 404(b).

That being the case, the just-described conviction can do double duty, serving both substantively and as a source of impeachment. This Court will not however grant defense counsel's effort to introduce Taylor's other felony drug conviction dated

4

July 31, 2006, which under the circumstances would not only be duplicative but would also equate sufficiently to forbidden propensity evidence to bring Rule 403 into play.[1]

Next Motion 5 also challenges the admissibility of prior felony convictions of witnesses, as to which this Court contemplates applying Rule 609 unless overridden by Rule 403--a determination that will have to be made on a case-by-case approach at trial. Lastly, Taylor seeks to bar reference to the alleged use of alias names--a matter that may or may not be probative in determining the credibility of a witness. That too will have to be resolved on an individualized basis at trial.

Accordingly, Taylor Motion 5 would have to be listed as granted in part and denied in part. Any necessary particularization in the respects indicated above will await the time of trial.

Next, Taylor Motion 6 seeks to bar any reference to gang membership, an issue as to which defense counsel are well aware of this Court's position. Those same lawyers served as co-counsel who represented the defendants in Ramirez v. City of Chicago, 05 C 317, in which this Court's November 17, 2009 memorandum opinion and order (2009 WL 3852378, at *1-2) ruled out

---

[1] When criminal convictions are not in the crimen falsi category, the introduction of two such crimes for impeachment purposes, as though defendant's lack of credibility is somehow doubled, is another reason to call Rule 403 into play.

5

that type of evidence in reliance on such cases as United States v. Irvin, 87 F.3d 860, 865 (7th Cir. 1996)--an opinion that decried the use of such evidence as seeking "guilt by association."[2] Accordingly Taylor Motion 6 is granted.

That jumps the discussion to Taylor Motion 9, which asks to bar all references to, or introduction of, any evidence of Taylor's prior delivery of controlled substances. In that respect this opinion's ruling on Taylor Motion 5 has already held "that the underlying circumstances of Taylor's conviction stemming from a May 16, 2007 arrest qualify under Rule 404(b)"--see Treece v. Hochstetler, 213 F.3d 360, 363 (7th Cir. 2000) and cases cited there, all permitting the use of such evidence to demonstrate a defendant's modus operandi. Hence Taylor Motion 9 is denied.

Lastly, Taylor Motion 10 seeks to bar the defendant officers from asserting an inability to pay as a defense to the punitive damages sought against them by Taylor. In that respect the parties cross swords on a factual issue: Taylor's Mem. 17 says that "Defendant Officers have refused to produce income or asset

---

[2] Attempted "guilt by geography" and "guilt by association"! Why do counsel overreach by seeking to tar defendants with such vicarious evidence? In the Ramirez case, the lawyers who acted there as co-defense-counsel with the present defense counsel in this case have just represented their clients there successfully, obtaining a favorable jury verdict without the use of such tactics that invite the invocation of Rule 403.

6

information," while defendants' Mem. 14 retorts:

> Contrary to the impression left by Plaintiff's motion, defendants never refused to provide their financial information to Plaintiff. He never so much as propounded an interrogatory on the subject, and opted not to take any of the officers' depositions.

But from an analytical point of view, a claimed inability to pay punitive damages would seem to be an archetypical Fed. R. Civ. P. 8(c) affirmative defense--an assertion that, much like comparative negligence, says that a plaintiff cannot collect a full measure of damages for a reason other than a failure of proof on plaintiff's part.[3] Indeed, Kemazy v. Peters, 79 F.3d 33, 36 (7th Cir. 1996) has held in a Section 1983 action against a police officer--following the majority of other circuits--that it is the defendant rather than the plaintiff that has the burden in pleading as well as proof to show inability to bear the burden of punitive damages:

> Individual defendants, as in the present case, are reluctant to disclose their net worth in any circumstances, so that compelling plaintiffs to seek discovery of that information would invite a particularly intrusive and resented form of pretrial discovery and disable the defendant from objecting. Since, moreover, information about net worth is in the possession of the person whose net wealth is in issue, the normal principles of pleading would put the burden

---

[3] In that respect, cf. Carter v. United States, 333 F.3d 791, 796 (7th Cir. 2003), where our Court of Appeals pointed to the majority rule in other circuits that hold a limitation on damages is an affirmative defense that must be pleaded in the answer (which was not done here as to the punitive damages issue). There the Court of Appeals also analogized the defense to comparative negligence, as this Court has here.

7

of production on the defendant--which, as we have been at pains to stress, is just where defendants as a whole would want it.

With defendants not having advanced such an affirmative defense, they may well be held to have waived--or more precisely forfeited--the issue of ability to pay.[4] That might require further inquiry (see the discussion in <u>Carter</u>), but for now Taylor Motion 10 is granted.

_____
        Milton I. Shadur
        Senior United States District Judge

Date:   August 24, 2012

---

[4] Incidentally, any introduction of that subject into the jury instructions would necessitate a clarifying instruction on compensatory damages that apprises the jury that the City of Chicago bears responsibility for payment of such damages. That probably should be done in any event in any case where punitive damages are sought and where the jury needs to be told that punitive damages are not available against the municipality. But what has been said in this footnote is a separate subject to be addressed before or during the jury instruction conference.